IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CARL STORY                                                                                          PLAINTIFF

V.                                    CIVIL NO. 4:10-cv-04160

SHERIFF RON STOVALL;
and NURSE CARMILLITA
WILLIAMS                                                                                          DEFENDANTS

**MEMORANDUM OPINION**

This is a civil rights action filed by Plaintiff, Carl Story, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 43.

Currently before the Court is Separate Defendant, Sheriff Ron Stovall's, Motion for Summary Judgment (ECF No. 33) and Separate Defendant, Nurse Carmillita Williams's Motion for Summary Judgment (ECF No. 29). Plaintiff requested the aide of the Court in responding to these Motions. ECF No. 38. The Court propounded a questionnaire, and Plaintiff returned it as his Responses to Separate Defendants' Motions for Summary Judgment. ECF No. 42. This matter is ripe for consideration.

I.      BACKGROUND

As this case is before the Court on Separate Defendants' Motions for Summary Judgment, the Court will assume the facts as stated by Plaintiff, the non-moving party, in his Response to

1

Motion for Summary Judgment are true.  The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas.  ECF No. 21, p. 1.  Plaintiff alleges his constitutional rights were violated when he was denied and/or delayed medical care; denied access to the courts; and denied access to a grievance procedure.  ECF No. 21.  Plaintiff has brought this action against Separate Defendants in both their official and individual capacities.  ECF No. 42, ¶ 27.

Specifically, Plaintiff claims he fractured his left heel, on September 26, 2010, while getting off of the top bunk.  ECF No. 21, p. 4.  Plaintiff notified the medical unit of his injury on September 27, 2010.  ECF No. 42, ¶ 2.  He was already receiving 800 milligrams of Ibuprofen and was instructed to ice and elevate his heel.  ECF No. 42, ¶¶ 3, 5.  On September 28, 2010, Plaintiff was examined by Dr. Nash, at the MCDC, and Dr. Nash ordered x-rays of Plaintiff's foot.  ECF No. 42, ¶ 7.  After two attempts, Plaintiff was taken to Ark-La-Tex Health Center, on October 13, 2010, to have an x-ray on his foot.  ECF No. 42, ¶¶ 8, 10, 12-14.  On October 26, 2010, Plaintiff was examined by Dr. Smolarz, an orthopedic surgeon, and Dr. Smolarz recommended Plaintiff wear a fixed brace as treatment for his fractured heel.  ECF No. 42, ¶ 18.  Dr. Smolarz contacted Nurse Williams for approval of this treatment and she approved such treatment on October 26, 2010.  ECF No. 42, ¶ 19.  Plaintiff claims he was "left to suffer and endure acute debilitating, and sever physical and mental anguish and pain . . ." as a result of these actions by Nurse Williams and Sheriff Stovall.  ECF No. 21, p. 7.

Plaintiff also claims that during the "time period relevant to August 18, 2010," Sheriff Stovall (1) denied him access to the courts; (2) denied him an effective offender grievance system; (3) denied him access to a black or dark-blue ink pen to prepare legal documents; (4) denied him

access to white typing paper; (5) denied him access to a law library and legal research material; (6) denied him ability to prepare and file effective writ of *habeas corpus*; (7) established policies, rules, and regulations controlling the employees of the MCDC; (8) denied him adequate writing paper, envelopes, and postage stamps; and (9) denied him unlimited photocopying. ECF No. 21.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-2 (1986), and a fact is material if it affects the outcome of the case, i*d.* at 248. The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson,* 477 U.S. at 256; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

Nurse Williams argues she was not deliberately indifferent to Plaintiff's broken heel, and Sheriff Stovall argues Plaintiff has failed to allege any policy or custom to support his official

capacity claims; Plaintiff cannot show Sheriff Stovall denied him medical care or access to the courts; and Plaintiff's claims regarding the grievance procedure at MCDC are not cognizable under Section 1983.

### A.  Official capacity claims

Plaintiff claims Separate Defendants violated his constitutional rights in both their official and individual capacities.  Sheriff Stovall argues Plaintiff has failed to show that a policy or custom of Miller County was the moving force behind any alleged constitutional violations.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir.1998), the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d at 914.

Plaintiff has not proffered any facts to support his claim that a custom or policy of Miller County was the moving force behind his claimed constitutional rights violations.  ECF No. 21; ECF No. 42, ¶¶ 27-8.  Therefore, there is no basis on which Miller County may be held liable. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91 & n. 55, 694 (1978) (plaintiff seeking

to impose liability on local government body under Section 1983 must show official policy or widespread custom or practice of unconstitutional conduct that caused a deprivation of constitutional rights).

### B. Denial or delay of medical care

Plaintiff claims Nurse Williams and Sheriff Stovall denied or delayed his medical care for his fractured heel. Nurse Williams argues she was not deliberately indifferent to Plaintiff's medical needs, and Sheriff Stovall argues among other things that (1) Plaintiff cannot meet the subjective component of a denial of medical care claim against him; and (2) Plaintiff's claim must fail because he cannot offer any evidence of a detrimental effect on his health that resulted from any delay in treatment.

The Eighth Circuit Court of Appeals analyzes both a pretrial detainee and a convicted inmate's claims of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F .3d 340, 344 (8th Cir. 2006). To prevail on his denial of medical care claim, Plaintiff must prove that Separate Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v.*

5

*VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). However,

6

when the need for medical attention is obvious to a layperson, the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

It is undisputed that Plaintiff received 800 milligrams of Ibuprofen and was instructed to elevate and ice his foot on September 27, 2010—the day Plaintiff informed the MCDC medical staff of his fall; Plaintiff was seen by Dr. Nash at the MCDC on September 28, 2011—two (2) days after his fall—and Dr. Nash recommended an x-ray of Plaintiff's foot; an appointment for the x-ray was scheduled for October 7, 2010; Plaintiff's prescription for Ibuprofen was renewed for an additional thirty (30) days on October 5, 2010; MCDC officers were unable to transfer Plaintiff to his x-ray appointment on October 7, 2010; Plaintiff's foot was x-rayed on October 13, 2010—seventeen (17) days after his fall—revealing a nondisplaced longitudinal fracture of the calcaneous; and Plaintiff was examined and placed in a fixed brace by orthopedic surgeon, Dr. Smolarz, on October 26, 2010—thirty (30) days after his fall. ECF No. 42, ¶¶ 2-5, 7, 9-10, 13-14, 16, 18.

Accordingly, there is no genuine issue of material fact as to whether Plaintiff was denied medical care, he was not denied medical care.

The remaining issue is whether Separate Defendants were deliberately indifferent in delaying Plaintiff's medical care.[1]

---

[1] Neither Nurse Williams nor Sheriff Stovall dispute that Plaintiff suffered from an objectively serious medical need.

      1.    **Nurse Williams**

Nurse Williams does not dispute the fact that MCDC officers could not transport Plaintiff to his x-ray appointment on October 7, 2010. However, in her affidavit, she states she had no control over the transportation of inmates for outside medical services, or the scheduling practices of the Ark-La-Tex Health Center (x-ray center) and Orthopedic Specialists of Texarkana (Dr. Smolarz's office). ECF No. 30, Ex. 1. In response, Plaintiff asserts, under penalty of perjury, that Nurse Williams was in charge of scheduling the appointments for medical attention. ECF No. 42, ¶¶ 11, 17. Nurse Williams scheduled Plaintiff appointments to have his foot x-rayed. The record indicates Plaintiff was scheduled for an x-ray on October 7, 2010 at Ark-La-Tex Health Center and a copy of the appointment notation was given to "Capt. Jack." ECF No. 30, Ex. D. A second appointment was scheduled on October 13, 2010 with Ark-La-Tex Health and "Capt. Jack" was notified. ECF No. 30, Ex. E.[2] Plaintiff does not assert any facts indicating that Nurse Williams's responsibility for scheduling appointments also included coordinating the transportation to such appointments. Considering the facts in the light most favorable to Plaintiff, there is no evidence on the record indicating Nurse Williams was deliberately indifferent to Plaintiff's medical needs. *See e.g., Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (the delay of a month from the time the plaintiff's finger was tentatively diagnosed as fractured and the x-ray of the finger was held to be merely negligent).

      2.    **Sheriff Stovall**

In his Response, Plaintiff states that Sheriff Stovall was involved in the denial of his

---

[2] There is no notation on the appointment slip for Dr. Smolarz, however, Plaintiff's transportation to this appointment was not delayed.

medical care because Sheriff Stovall is responsible for Plaintiff's care while he is incarcerated at the MCDC.

Sheriff Stovall first contends Plaintiff has not met the subjective component of a delay of medical care claim against him because he cannot show Sheriff Stovall actually knew of his injuries. Plaintiff claims, under penalty of perjury, that he sent the October 6, 2010 Grievance directly to Sheriff Stovall. ECF No. 42, ¶ 26 (referencing the original Complaint).[3] Sheriff Stovall states in his affidavit that he did not receive a letter from Plaintiff in early October 2010. ECF No. 34, Ex. B. Clearly there are issues of fact as to whether Sheriff Stovall possessed actual knowledge of Plaintiff's injuries. However, considering the facts in the light most favorable to Plaintiff, the record does not support a finding that Sheriff Stovall was deliberately indifferent to Plaintiff's medical needs. *See e.g., Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (the delay of a month from the time the plaintiff's finger was tentatively diagnosed as fractured and the x-ray of the finger was held to be mere negligence).

Further, there is no verifying medical evidence on the record showing Plaintiff suffered a detriment or his prognosis was negatively impacted as a result of the delay in treatment. Plaintiff was released from MCDC on November 1, 2010. ECF No. 42, ¶ 20. Plaintiff had a follow-up exam with Dr. Smolarz on November 18, 2010 at which time Dr. Smolarz noted Plaintiff had pain, tenderness, and mild swelling in his heel and prescribed pain medication. Dr. Smolarz

---

[3] The Court notes that Plaintiff did not include this claim in his Amended Complaint. ECF No. 21. However, *pro se* pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002). Plaintiff references this claim in his Response and Sheriff Stovall addressed the claim in his Motion for Summary Judgment. Therefore, the Court will also address it herein.

recommended Plaintiff return in three to four weeks for an injection if his heel was not improved. ECF No. 30, Ex. H.  There is no evidence that Plaintiff returned to Dr. Smolarz for the injection.

The Court notes that delay in treatment coupled with knowledge that an inmate is suffering can support a finding of an Eighth Amendment violation. *Boyd,* 47 F.3d at 969.  Here, however, the record does not show Plaintiff was suffering without medical treatment or that Sheriff Stovall was deliberately indifferent to his medical need.  Plaintiff does not dispute that he was receiving Ibuprofen for the pain and was also advised to ice and elevate his foot by the MCDC medical staff prior to his x-ray and examine by Dr. Smolarz.  *See Johnson v. Adams,* Civil No. 11-2722, 452 Fed. Appx. 708 (8th Cir. 2012) (no genuine issue of material fact created when inmate's fractured finger was tapped, scheduled for x-ray, and orthopedic consult within approximately two and one-half months from injury when no verifying medical evidence establishing detrimental effect of delays).  Therefore, the Court finds Plaintiff has failed to show the requisite facts that he suffered a detriment or his prognosis was negatively impacted as a result of the delay in having his foot x-rayed and examined by Dr. Smolarz.

Further, Sheriff Stovall states in his affidavit that he has no involvement in the day-to-day operations of the MCDC.  ECF No. 34, Ex. B.  Plaintiff does not dispute this and instead seeks to hold Sheriff Stovall liable as the overseer and because he created the policies and procedures. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell,* 436 U.S. at 694.  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required

to support liability"). In other words, Sheriff Stovall cannot be held liable merely because he supervises the individuals allegedly responsible for violating Plaintiff's constitutional rights. *Id.; see also Mark v. Nix,* 983 F .2d 138, 139–40 (8th Cir. 1993) (Section 1983 liability requires some personal involvement or responsibility). There are no facts in the record indicating Sheriff Stovall was personally involved in any way in the events complained of by Plaintiff. *Keeper,* 130 F.3d at 1314 (no liability when no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark,* 983 F.2d at 139-40 (section 1983 liability requires some personal involvement or responsibility).

    C.    **Access claims**

Plaintiff claims Sheriff Stovall denied him access to the courts by denying him black or dark blue ink pens to prepare legal documents; white typing paper; access to a law library and legal research material; adequate writing paper, envelopes, and postage stamps; and unlimited photocopying. ECF No. 21. Plaintiff also claims in his Amended Complaint that Sheriff Stovall denied him the ability to prepare and file an effective writ of *habeas corpus*. ECF No. 21, p. 3. Sheriff Stovall argues that Plaintiff has not shown an actual injury and thus, has not stated an access claim. Additionally, Sheriff Stovall reiterates that he is not involved in the day-to-day operations of the MCDC and did not deny Plaintiff pens, writing materials, envelopes, postage, and photocopying privileges.

The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not

create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods). However, an inmate has no standing to pursue an access claim unless he can demonstrate that he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on an access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Plaintiff is not entitled to both adequate assistance of counsel and adequate access to a law library. *Bounds*, 430 U.S. at 828 ("the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *United States v. Kind,* 194 F.3d 900, 905 (8th Cir.1999). The provision of adequate

12

legal assistance to an inmate satisfies his access rights and relieves the prison from providing access to a law library. *Schrier v. Halford*, 60 F.3d 1309, 1313 (8th Cir. 1995). According to the Eighth Circuit, the term "adequate" as used in *Bounds* to modify "assistance from persons trained in the law" refers to the adequacy of the inmates access to counsel or other law-trained assistance. *Id.* (citing *Quam v. Minnehaha County Jail,* 821 F.2d 522, 523 (8th Cir. 1987) (per curiam) (regular access to a court-appointed attorney satisfies a Section 1983 plaintiff's access rights)).

The prison must also provide inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith,* 430 U.S. at 824-5; *see also Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir.1996)(citing *Lewis v. Casey,* 518 U.S. at 350-1). The duty to provide such allowances is constrained by the inmates' right of *meaningful* access to the courts. *Bounds v. Smith,* 430 U.S. at 824-5.

Plaintiff stated in his Response that he had an attorney to challenge his criminal conviction. ECF No. 42, ¶ 23. Therefore, he is not also entitled to access to a law library. Plaintiff then stated he was denied legal research to prepare and file legal documents in this Court but he was able to send legal mail. ECF No. 42, ¶¶ 24, 25. The Court presumes Plaintiff is referring to his ability to prosecute the present case. There are no facts before the Court indicating the Plaintiff has been unable to present his claims in this case. Additionally, Plaintiff's access rights do not encompass the ability to "litigate effectively once in court." *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (quoting *Lewis v. Casey*, 518 U.S. 343, 354 (1996)).

The Court notes that Plaintiff also alleged in his Complaint that he was denied the ability to file an effective *habeas* petition. ECF No. 21, p. 3. However, Plaintiff did not mention this claim in his Response and has not offered any facts supporting such a claim. Further, Plaintiff

13

stated in his Response, that he had an attorney to challenge his criminal conviction. ECF No. 42, ¶ 23. Therefore, the Court finds Plaintiff has failed to present facts of an actual injury resulting from the denial of black or dark blue ink pens to prepare legal documents; white typing paper; access to a law library and legal research material; adequate writing paper, envelopes, and postage stamps; and unlimited photocopying.

Furthermore, there are no facts n the record showing Sheriff Stovall was personally involved in denying Plaintiff black or dark blue ink pens to prepare legal documents; white typing paper; access to a law library and legal research material; adequate writing paper, envelopes, and postage stamps; and unlimited photocopying. As explained above a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell,* 436 U.S. at 694.

## D. Grievance procedures

Plaintiff claims he was denied an effective offender grievance system at MCDC. Sheriff Stovall argues this is not a cognizable claim under Section 1983.

Previously, the Court recommended Sheriff Stovall's Motion for Judgment on the Pleading be denied on this issue even though the Court recognized that failure to respond to a grievance does not, without more, equate to a constitutional violation. The Court declined to dismiss Sheriff Stovall reasoning:

> [C]ourts have recognized that a plausible theory exists if the Plaintiff maintains the grievance procedure impeded his ability to obtain adequate medical care. Because [Sheriff Stovall] designed or oversaw the grievance procedure, the argument runs, [he] may be held liable if it resulted in the denial of constitutionally adequate treatment. This is a plausible theory of the constitutional violation, and it fits comfortably under the rubric of deliberate indifference. *Langford v. Norris,* 614 F.3d 445, 464 (8th Cir. 2010) (internal quotations and citations omitted).

14

ECF No. 15.

This Order now considers a Motion for Summary Judgment rather than a Motion for Judgment on The Pleadings, and thus a different standard of review applies. As held herein, there are no facts on the record to indicate Plaintiff's medical treatment was constitutionally inadequate. Therefore, Sheriff Stovall cannot be held liable for a grievance procedure if it did not result in the denial of constitutionally adequate treatment.

Furthermore, the Court notes Plaintiff does not have an independent constitutional right to a grievance procedure. *See Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)). A jails failure to process an inmate's grievances, without more, is not actionable under section 1983. *Buckley,* 997 F.2d at 495.

### IV.   CONCLUSION

For the reasons stated above, Separate Defendants' Motions for Summary Judgment (ECF Nos. 29 and 33) are hereby **GRANTED** and this case is dismissed with prejudice.

**IT IS SO ORDERED** this **17th day of September 2012.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE